May it please the Court, my name is Julian Balingi. I'm here on behalf of the appellant, Dr. Edward Lee. This is an employment case. Dr. Lee was a test engineer for TRW. He was laid off at age 62 after 22 years' service. If there's a theme to this case, it's that there were such significant improprieties in his selection for layoff, coupled with evidence of age animus on behalf of the employer, to create triable issues to reverse the district court's granting of summary judgment on all of Mr. Lee's claims. Dr. Lee's first claims are those sounding in age discrimination, which are the fifth and seventh causes of action. The employer initially argues that there is no prima facie case. I don't want to dwell on this for a period of time. But the law as set forth in O'Connor v. Consolidated Coin Manufacturers is only that Dr. Lee was in the protected group, he was performing adequately, and people substantially younger were retained. The record is clear that there were test engineers in his group ages 39, 34, 38, 39, and 40 that were retained, all significantly younger. That one was in the protected group is not the issue. The issue is that he was significantly younger. What I really want to get on in regard to the age discrimination is the evidence of pretext. Now, there is a litany of evidence indicating that the selection process was so flawed as to create a triable issue in regard to the age discrimination claim. Initially, the person who chose Dr. Lee for layoff was a John Mollis. Now, Paul Nakamura, who was a superior of Mollis, testified that the functional supervisor should be the one who was selecting one for layoff. Mr. Mollis was not the functional supervisor, and in fact, Mr. Mollis testified that he had not had occasion to observe Dr. Lee's performance on a day-to-day basis or even a month-to-month basis during the year of 1999. Nonetheless, Mr. Mollis, in selecting Dr. Lee for layoff, did not even consult Dr. Lee's functional supervisor. Rather, he re-evaluated Dr. Lee and re-evaluated another person, Ocampo, so that Dr. Lee became the lowest-rated engineer and Mr. Ocampo became a higher-rated engineer in this group. Suppose Mollis was doing this because he just didn't like Mr. Lee for some reason. Do you have evidence that Mollis did this because of Mr. Lee's age? We have no evidence that Mollis was himself engaged in age animus. What there is evidence in the record is a statement by HR, Mr. Weaver, that was attributed to Mr. Weaver by Mr. Mollis, that Mr. Weaver considered age in selecting candidates for layoff. The district court dismissed that evidence as, I believe, musings as to possible proprietary reasons. Was it the district court's role to do that? Was it the district court's role to do that? No, I don't think so. Not at this stage, Your Honor. Not at the summary judgment stage. Because what the district court said was, well, Mr. Weaver was musing about proper consideration of age. The significant part of that is that when Mr. Weaver was asked about this statement in deposition, he denied ever making it or ever discussing age with Mr. Mollis. And that's significant for two reasons. First, it really renders the district court's finding without any factual basis. Second, at the summary judgment stage, I believe it raises a triable issue as to whether or not Mr. Weaver was, in fact, expressing some permissible age consideration or that his statement was evidence of unlawful age animus. So it's an ambiguous statement. I beg your pardon? It's an ambiguous statement we're talking about. That is correct. In fact, it's an ambiguous statement that at the summary judgment stage, the court in making a finding as to what that statement meant was engaging in impermissible finding of fact. It's something that a trier of fact should be able to decide. But what he says is he generalized. That was the answer. And then he said he talked about things like seniority and age and the type of things that HR does. That's correct. That's the key sentence or two that we're focusing on here. And I think at best it's ambiguous. Would you agree with that? That's correct. And standing alone it's ambiguous. But when Mr. Weaver is deposed and Mr. Weaver says, no, I never made the statement, then I think a trier of fact can consider Mr. Weaver's denial and make a finding potentially that that was an expression of unlawful age animus. But he didn't say that he never had a discussion or that they didn't discuss considerations, generalizations. He said that he never – age was not a factor. That's what Weaver said. I believe he said, Your Honor, that he didn't discuss it. But if it's ambiguous, isn't the district court supposed to construe the facts in the light most favorable to the non-moving party? That's correct. That's correct. So you would have to construe it in the light most favorable to your client. But the Court seemed to think it wasn't important enough evidence. That's correct. I would submit to the Court that at summary judgment stage the district court should have construed that statement in the light most favorable to the plaintiff, when in fact what the district court did was construe that statement in the light most favorable to the defendant. Age is an odd thing to be talking about in that context, because normally when a company is engaging in layoffs, they're looking at – when they look at seniority, they're looking at the people with the least seniority. That's correct. Are getting laid off, not the people with the most seniority. And in fact, Dr. Lee did have the most seniority in his group. I think – I would submit that if Mr. Weaver had testified, no, what I was talking about is we consider age in light of the fact that we don't want to lay off the most old employees or the older employees, I think then the district court could have made that finding. But in light of Mr. Weaver's denial, then I think that finding was inappropriate by the Court. No. What I'm suggesting is it's just odd that Mullis would say age in conjunction with seniority, because that's contrary to general practices of most companies when they're engaging in layoffs or a reduction in force. That's correct. That's correct. Is there any significance to the fact that two months later when they hired or laid someone off, they did not – they followed the matrix, they didn't pick the oldest person? And when you look at the totality of circumstances and try to understand motivations, is there any significance to that fact two months later? Only to the extent that it may be evidence that in that particular layoff, perhaps. Age wasn't a factor. It wasn't a factor. But I think what we have to look at is this particular layoff in Dr. Lee. So is there something about Dr. Lee that other – that would cause them to focus on his age in his case, not in the next situation focus on age? Is there something we don't know about or that hasn't been brought forward? Well, I think if you look at all the facts surrounding this layoff, and again, you know, focusing on pretext, you know, Mullis not knowing about Dr. Lee's performance, Mullis theoretically rigging the rating so that Dr. Lee becomes the lowest, and the fact that there are seven criteria, performance, ability to perform work required, experience, education, maintaining a balanced workforce, service credit, and special security requirements, and both Mullis and Nakamura testify that they didn't consider education, service credit, and maintaining a balanced workforce. Education being that Dr. Lee was the most educated person in the group. He had a Ph.D. Everybody else in the group had a Bachelor of Science except for one employee who actually had a high school education. Well, if we presume he was an at-will employee, they could have laid him off for any one of those reasons as long as it wasn't constitutionally protected. If he is an at-will employee, you can terminate him for any reason except one prescribed by statute. They could have said he's too educated for what we're doing as long as it wasn't, I mean, that may seem strange, but legally that would be legal as long as it wasn't based on age, gender, et cetera, et cetera. Any one of these factors might be a legitimate reason, although you might think that's a crazy reason. It might be legitimate as long as it's not age, and so I'm wondering why they would go to the, if they wanted to get rid of him, why would they go to all this process to create a pretext when they had, if there was some other reason, they could have simply said you're too educated or you're too, whatever they pick out of the air. I think because he was the oldest employee, I think the process indicates that they wanted to get rid of him because they rigged the process in order to get rid of him. There's evidence in the record to that. And then if you look at the age comment, and then, which is not the only evidence of animus that we have in the record, there's a letter, I think, at page 587 of the record that indicates that there was a statement attributed to a Larry L. during a 1996 layoff that TRW was considering the older employees and wanted to get the older employees out. And then there is one employee in the group, Eddie Chung, who was not significantly younger than Dr. Lee. Eddie Chung sued TRW for race discrimination, excuse me, age discrimination during the course of a prior layoff, and when this round of layoffs was coming up, he went to them and he said, you're not going to lay me off again because I'm going to sue you again, and he wasn't chosen for layoff. Now, I'm suggesting to the court that the rigging of the selection process or the evidence that supports the rigging of the selection process, the evidence in the record, which indicates age animus, certainly is sufficient enough to create a triable issue that a trier of facts should determine whether or not Dr. Lee was laid off as a result of his age. Do you want to reserve the rest of your time? Do you want to reserve the rest of your time? Yeah, and I just wanted to talk briefly about the at-will issue. The district court found that Dr. Lee signed an at-will agreement that rendered him an at-will employee as a matter of law. I would just ask the court to look at the document he signed. It is not an at-will agreement. In fact, it says something to the extent of we reserve the right to terminate for any lawful reason, and if you look at the document, the document talks about the behavioral standards and that if an employee does not conform to the behavioral standards, he or she couldn't be terminated. I think that raises an inference or a potential understanding from the person who signs it that there may need to be cause to terminate somebody. I think it creates a question of fact. And, in fact, Mr. Nakamura, who was an executive, testified that he believed that TRW did need cause to terminate someone. I don't want to take just one thought, just to hit my mind here. When this process was over and they had completed their RIF, throughout the company, the actual average age was older than according to some materials I saw here as opposed to younger. That's true, isn't it? That is true, but I think the focus of inquiry, that was for the entire employee complement. The focus of inquiry should be the test engineering group, and that's where the oldest person was laid off, the only person. Thank you. I'll reserve my time. May it please the Court. Gregson, D.C., on behalf of FLE, TRW. If I may first address this issue of the Weaver or Molas comment. And I'm going to try to sort through it once and for all. We wrestled with it at the district court level. It's been wrestled with in the briefs. And here, I think, is what the record supports. Lee throughout, from the motion, opposition to the motion all the way up to this Court, has tried to say that the record reflects a comment that Mr. Molas says that Weaver considered, that Weaver told him he had considered things like agency, age, and seniority. You go and read the record, and the statement is really quite different. What Weaver says is, as this Court observed a moment ago, HR considered things like age and seniority. It is a musing. It's speculation. There's no foundation in the record that Mr. Molas was speaking with knowledge. Then, when Mr. Molas was speaking with knowledge, then when Mr. Molas was speaking with knowledge, he says, I honestly don't remember the specifics of what was said. I just remember the generalized. Correct. And his term on this phrase is, he considered things like. When Mr. Weaver is asked, he specifically says, we did not consider age or seniority. I did not consider age or seniority. Now, we can take it to the next step, and I think I can even render this even more moot than it is now. It's an irrelevant, ambiguous statement. And here is why. Throughout this proceeding, Mr. Lee's position has been that I was the victim of a tainted matrix. Throughout this litigation, Mr. Lee's position has been Mr. Molas is the architect and designer of that matrix. Moments ago, we heard repeatedly the comment that Mr. Molas rigged it to get rid of Mr. Lee. Now, if the Court looks back at the trial court record and goes back to the arbitration proceeding, and that testimony is in the, the transcript of that testimony is in the record as well, Mr. Lee's premise to begin with was Mr. Molas was out to get me because we were in competition for the same position. Nothing to do with age. It was that Molas wanted to save his own skin because he saw a riff coming down the pipe. Now, you have to bear in mind at this point, Molas is the bad guy. Molas is the guy that has an animus. We don't even have an age animus at this point. It's just an animus. And according to Mr. Lee, the animus is I'm trying to save my own skin, therefore I want to get rid of Mr. Lee. This comment that pops up in the record is attributed to Mr. Weaver. So even if the comment was made, it doesn't get Mr. Lee where he wants to go because now it's a comment by a nondecision maker. But who made, is it? I mean, who made the decision? It is for this reason, Your Honor. On page 31 of the brief, he describes, Mr. Lee, of his opening brief, he describes Molas, while in direct competition for the same position, designed the original matrix in his arbitration testimony when questioned by the arbitrator. So you're saying that Mr. Molas was, you know, trying to save his own skin or worse to that effect. Mr. Lee says yes. Then at page 36 of the brief, and this is to answer the Court's question just now, at page 36 of the brief, Weaver is described as only signing off on the selection that was made by Molas's matrix. Now, picture what happens in the process. Here, Molas is designing this matrix. All the evidence, all the argument is that because of tainted or improper or rigged factors, Lee becomes the one that's selected. There is no evidence in the record to show that Mr. Weaver or anyone else at TRW either instructed Mr. Molas at the front end on how to do it to make sure we get rid of Mr. Lee, and there's no evidence of Mr. Weaver or anybody on the tail end having knowledge that this was in fact a defective selection tool that targeted Mr. Lee because of age. And again, I hesitated there because I'm reminded by the Court's comment of Molas. But it seemed to have deviated from their standard protocol. And Goose, I'm going to get to that, Your Honor, but Goose, I think, addresses that and takes that out of the mix, the California Supreme Court case, Goose v. Bechtel. But back to where I was on this issue of Weaver not knowing about it, not being a decision-maker, there's no evidence that anybody knew this was going on, and I hesitated a moment ago because, as the Court observed, it still has to be for an illegal reason. It has to be for a reason protected by statute. Otherwise, you can discriminate on any other ground you might want to. Now, that's the evidence of this comment. Now, you go from there and you go to the pretext argument, and I'm coming back to the question from a moment ago, Your Honor. You start out with the premise there is a legitimate nondiscriminatory reason. It is a facially neutral matrix. If you look at the matrix on its face and all the criteria that were listed, there is nothing to suggest even remotely that they are driven by age. The argument mounted by Mr. Lee is, well, you should have selected others. And Mr. Lee, if you follow his thread all the way through, what he wants to do is he wants to come up with a selection device that taints it in his favor, that insulates him, insulates him from the rift. But he takes issue with the factors that were put in, facially neutral factors. And he argues that that's evidence of pretext. Well, in Guz, the California Supreme Court, and again, we're dealing with a FIHA claim here, so I think Guz and the view of the Supreme Court on this is important. Guz makes the statement that an inference of discrimination cannot be drawn solely from evidence that a company lied about its reasons. And now I'm quoting. The pertinent statutes do not prohibit lying. They prohibit discrimination. There must still be evidence supporting a rational inference that intentional discrimination on grounds prohibited by statute was the true cause of the employer's action. That's what's missing here. We have these facially neutral factors. Mr. Lee doesn't lie. Well, it's not so much that they're facial. What the problem is, is that they deviate from the normal, from TRW's regular. That is the argument. Regular protocol or whatever. I don't know how to say it. Yes. And what he's got to do at this stage of the proceeding, you're in the summary judgment stage. You've moved, TRW's moved for summary judgment on the basis that there are no undisputed material tribal issues of fact. And then on that basis, as a matter of law, we're entitled to judgment in our favor. And it's Mr. Lee's burden at that time to raise a genuine tribal issue of fact, and his attempt was focused here at pretext. He says there is a dispute about pretext. And when you look at what the district court did here, it troubles me that it looks like contrary to the rules of summary judgment, whether in State court or in Federal court, especially in Federal court, is that she's making findings, which is just in drawing inferences in favor of TRW, and all those inferences should be drawn in favor of the nonmoving party. And she makes, for example, look, on this whole business about the judge's order, page 835 of the record, when she deals with this claim about the protocol, the matrix, and she says plaintiff argues that his evidence leads to the inference that the matrix was custom-tailored to select plaintiff for layoff. That's his argument, and he's asking for an inference to be drawn in his favor in that regard. The judge says, well, plaintiff's arguments regarding flaws in the selection procedure are unconvincing. Sounds to me like she's making a finding of fact. Defendant is not required to use a perfect procedure to select employees for layoff. And then, interestingly, the judge cites a case from the 10th Circuit, a case from the 7th Circuit. Well, that's well and good, but I care about what the 9th Circuit has said about this. And it looks to me like what she did there was make a finding of fact, and then, based upon that, conclude, forgetting the next, the whole statement about considering age. She makes findings of fact, and that's just not proper. It's just not proper on summary judgment. I think the response is this, though, Your Honor. This Court is looking to see whether the right result was reached, not how the Court got that. No, I review this de novo. And that's my point. And we were informed by what the district court did. But we look at this and ask ourselves, was there a genuine tribal issue of fact? And that's my point. This Court is looking at it de novo. And if the right result was achieved, even though the process by which the district court judge got there, it can still and should still be affirmed. What I'm saying is that what the Court said was true. It is a host of problems with that statement. But the principal one is that would require us to make findings of fact. No, I don't think so, Your Honor. On these two issues that have popped up, I read the district judge's reasoning of this comment. I would have added to it what I presented to this Court, that it's irrelevant because there's no evidence that it's by a decision-maker. On this issue, my point is, if you look at Goose, Goose highlights the fact that even if there's dissembling, even if there's lying, all these other words have come up in the Federal jurisprudence, on a FEHA claim, that still doesn't get you there because there still has to be evidence that permits a rational inference that this was done on a prohibited basis. And there's nothing in this record that Mr. Lee offers, other than Mr. Lee saying, I think it was because of my age. There's no expert evidence to show that that was a tainted matrix. There's no expert evidence to show that if the factors Mr. Lee wants in there, it could have been there. Why would it be unreasonable to infer, to make the inference that Lee's asking that the Court make regarding that matrix? What would be? Why is it? Why would it be unreasonable? You know, see, on summary judgment, when there's a – you draw – if there's a – if there is some dispute, you draw facts, you draw inferences, and you look at the facts and like, most favorable to the nonmoving party. Or you draw inferences in favor of the nonmoving party. So I'm asking you, with respect to this matrix issue, why would it be unreasonable to infer that they were custom – they custom-tailored the matrix to get Lee out of there because of his age? Why is it unreasonable to make that inference? Because it's not a rational inference that it was done on a prohibited basis. Because, as this Court observed a moment ago, it is just as reasonable to infer if there's been dissembling or TRW hasn't applied all of its listed policy reasons or factors for layoff, just as reasonable to infer that they did it because he had too much education. There's no inference. There's nothing in this record to permit a rational inference of his age. If there are two reasonable – if there are two reasonable inferences in this context, you draw the – you would draw that inference in favor of the nonmoving party. Let me move to something else before I get something else on the table here that I think validates TRW's and Mollis' matrix. The district court in footnote 9 made a comment that is significant when you couple it with a comment or an observation in Mr. Lee's brief. In footnote 9, the district court notes that on one of the subsequent iterations of the matrix, two other supervisors were asked to rate the people. I think it was Mr. Redding and Mr. Gomez. And the district court judge observes that while Mr. Lee challenges Mr. Redding's evaluation on the matrix, he makes no comment whatsoever, no criticism whatsoever about Mr. Gomez's placement of Lee on the matrix. And Mr. Gomez happens to place Mr. Lee last, just like Mr. Mollis' matrix did. This is Mr. Gomez now. Why should that be important? Well, let me read you Mr. Lee's characterization of who Mr. Gomez was. On page 31 of his opening brief, Mr. Lee himself described Mr. Gomez as, quote, the only person with direct knowledge of Lee's performance. So now with that footnote, you have Mr. Lee saying the only man in the world holding the candle in front of us all that knows about me and Mr. Lee and what I've done, the only one who has direct knowledge of my performance capabilities is Mr. Gomez. And now you have a matrix with Mr. Gomez independently ranking Lee against the others. And he puts him exactly the same place Mollis puts him, the Mollis matrix. And from this record, Mr. Lee still wants this Court and wanted the district court to draw inference of age discrimination. There is no evidence of that. Well, what the district court did was on this record infer or say that based on the evidence that was presented here, no tribal issue, no reasonable prior fact could ever conclude that age discrimination was involved here. You can do that in some instances in summary judgment. You know, there's the comment in the Supreme Court's trilogy. I forget which cases. I can never remember exactly. But not more than a scintilla. There's not more than a scintilla of evidence. Now, I'm not sure that that, that what we have here is just something less than a scintilla of evidence. And I've always tried to understand what that means. And I, to this day, I cannot figure out what a scintilla of evidence means. But the task here for Lee is to show that there is a dispute of fact and that the focus here is on, is on pretext. And I think it's very difficult, unless you make findings like the district court did, to conclude that as a matter of law, TRW is entitled to judgment. But, Your Honor, there's, there's a case. Now, maybe that Lee doesn't have a good case. And it may be that, you know, Lee's going to lose if he gets to trial. But I think it's hard on this record to say that, that, that there is no genuine tribal issue of fact as to pretext. Again, Your Honor. And our case law is pretty clear. It's pretty, it's pretty, you know, the burden is not a heavy one in our case law. Let me go to the case law, because I think that's important. And we cited it in our brief. I don't have it in front of me here. It's at the council table. But the case that comes to mind, there's an older Ninth Circuit case, Steckel v. Motorola. Steckel, S-T-E-C-K-L. And then we cited other more recent cases in our brief. And when you're at, in this level of analysis, where you're in the McDonnell-Douglas model of proof, where you're the shifting burden analysis, it has to be substantial evidence. It has to be compelling evidence. It's not just any possible evidence. Under any possible circumstance, could there be a finding that age was involved? That's not the standard. It has, under Ninth Circuit law, it has to be substantial evidence. I'm not sure that that's correct. I don't want to get in a debate with you right now, because I haven't looked at the cases lately. But our case law indicates, though, that once you get to this level, it's, the burden is not that heavy. But there's still a burden. There's still a burden, yes. In traditional summary judgment analysis, the nonmoving party, just as the moving party has the burden of coming forward and saying, there are no, all these facts are uncontroverted. There's just no dispute over these facts. And so it's your obligation to blame out and say, these facts are not in dispute. It's their burden to come back and then say, ah, no, no, no, no, no. Here's the facts that are in dispute, and they're material facts. And they can only be resolved through a trial. But, Your Honor, let me, this is why I mentioned Goos before. I would agree with the Court that the procedural process of how you get there and how you, the evidence presented, the shifting burden back and forth is procedural in your area, and therefore it's Federal law. But I submit that when you're looking at what is the, what weight is to be accorded to that evidence on a fee hawk claim. At the summary judgment stage? Yes. You have to look at Goos. And Goos says that even if there's evidence of dissembling, you still have to have evidence that permits a rational inference that it was done for a prohibited reason. There has to be rational evidence in the Supreme Court of California's eyes. In the Ninth Circuit eyes on the Steckel case and more recent cases, it has to be substantial evidence. It's not, the standard isn't any evidence. Well, I'm not saying it is any evidence. I'm saying that at the summary judgment stage, you apply these, the critical question is whether there is a genuine tribal, a genuine issue of fact in dispute that's material to the outcome. One closing comment. I'm winding down on my time. Just to respond to the at-will argument, I think counsel and Mr. Lee are mincing words. He signed an acknowledgment acknowledging that he was an at-will employee. Does it use that phrase? Pardon? Did it use the actual phrase at-will? I'm not sure if it did. It did not use the at-will phrase. What it did do is it uses the definition that you look at any case in California, Foley or any of them. It's what is used by the courts. I just couldn't recall. More importantly, under the Supreme Court's case, the California Supreme Court case in Asmus v. Pacific Bell, that case stands for the proposition that if an employee is given a unilateral proposition and accepts it by remaining on the job and accepting the benefits of the job, that is an acceptance of the terms of that unilateral condition. We have the language in front of us. Thank you, counsel. Thank you, Your Honor. Very briefly, I would commend to the Court pages 380 and 578 of the record where the testimony of Molis and Weaver, 380 and 578 of the record where the specific testimony of Molis and Weaver discussing this age, anonymous comment, is the case that we have here. And I suggest to the Court that it supports the proposition for which I argued. In regard to the matrix, the fact of the matter is, although the matrix may have been facially neutral, it was the application of the matrix that adversely impacted Mr. Lee. And there's evidence in the record that, in fact, his strong points were taken from the matrix. Even though there's testimony in the record, and this is power testing, that power testing was not necessarily something that was going to be needed in the unit in the future and, in fact, was needed in the unit in the future. And in regard to falsity not being enough to create a triable issue, I would suggest to the Court that there's just more than falsity here. There's not only this age, anonymous comment, the history of perhaps using age and selecting people for layoff, but the fact that Mr. Lee was the oldest test engineer by far and the only one laid off in the group. Thank you. Thank you very much, Counsel. Lee v. TRW is submitted. We'll take up Valencia v. Los Angeles.
judges: Wardlaw, Paez, Beistline